for oral arguments, 21-7050, United States v. Price. Senator Derryberry, you may proceed. May it please the Court, I am Barry Derryberry, representing Joshua Price, the appellant in this case. This case focuses on seven convictions that are centered on possession of cocaine base, for which my client received seven life sentences at sentencing in 2001. We filed in district court a motion for sentence reduction based on the First Step Act, and the court said that we did not have standing because the court could not grant relief in light of the life sentence and the guideline basis for those life sentences, which was a cross-reference in the sentencing guidelines crossing from the drug quantity guideline range that would apply over to the murder guideline that was applied here. And so on the basis of that cross-reference in the guidelines, Judge White and Ms. Coggey ruled that we did not have standing in this case. And so that's why we are appealing that. The standard of review is a jurisdictional issue in essence, and so this is a de novo inquiry at this level. Counsel, but as a practical matter, I mean, Mr. Price has had a lot of litigation in this court, and isn't it true that we've been pretty clear that his sentence is based on the murder cross-reference? It is absolutely based on the murder cross-reference, yes. That's true. And why doesn't that matter here? It doesn't matter because we know from Manny, for instance, that it's footnote 17 that's in Manny that says that once a person is eligible for consideration for sentence modification, the court may consider 3553A factors. In addition, a case law that I cited to the district court said that if the court does attend to sentence modification, it must correctly calculate the guideline range. All of that is down the track. We're still in the chute right now trying to get the court to say that we have eligibility. So is it eligibility or is it standing? Well, it's part of eligibility. It's standing and it's jurisdiction. Eligibility, if you want to, I mean, I think that you have to have a covered fence and you have to have standing. I mean, I kind of see it all as the same, but I realize we parse it and we're looking at whether or not there is standing, not mootness but standing. And so the inquiry is very succinctly framed by footnote 9 in Manny, as long as it is possible for the court to grant some actual reduction, an offender will have standing. So as I understand the logic of your argument, is your client is eligible for resentencing under the First Step Act, and then though he's eligible, you still have to clear the hurdle of standing, which our cases have erected for concurrent sentences at the very least. This is not a concurrent sentence. It's distinguishable from those cases. Therefore, there is standing. And then finally, your client's eligible for more or less a total do-over on resentencing. That's a very fair encapsulation. The simple path to bettering. Of our position. The fact that the reading between the lines, because the district court's order is measured in the wording that's used, it appears that the court seems to be looking at the cross-reference, the life sentence resulting from the cross-reference, is the barrier to there being a possibility of a lower sentence. And I say that's an issue for when you're down the track, and the court is considering whether or not. He's been down the track twice, and the circuits upheld the life sentence twice. Yes. It kind of looks to me like, if not law of the case, it looks a lot closer to our concurrent sentence in the case. You know, there's no reason to think that he's not going to get a life sentence. That's within the court's discretion, of course. And the sentencing that occurred in this case originally in 1999, of course, was well before Booker. The 3553A factors could not come into play because life was the only option unless the court departed. So there was no realistic assessment of 3553A factors. We want our crack at that. Yeah, so you're actually, the other part of your case, it turns on the fact that since the initial sentencing, the guidelines are advisory instead of mandatory on the cross-reference. It turns on that there, in terms of the law, I think this is a de novo construction of what the law is. And the law makes it permissible for the court to change the sentence, to reduce, to modify the sentence. That is possible. We're looking for, as well, a practical outlook. I think when the cases say, is there a possibility of actually reducing the length of incarceration, there is a practical aspect. There's a eligible count. And let's say, let's look at Marcus Ellis. That's in our briefing. There's an eligible count, but then there's two counts that are not eligible. So there is no realistic possibility of lowering the sentence. We don't have any of that situation going on. You have all covered offenses. Say again, please. You have all covered offenses in your case. They're all covered offenses. There are seven of them. They all involve crack cocaine. There was never dispute in district court that they are all covered. And so the court has the discretion to, at least to begin with, the 2002 decision from this court, the initial decision on appeal, direct appeal by this court, recognized an Apprendi error and said, really, this sentence was only legal or supported under 841B1C with a maximum of 20 years. And so the right guidelines calculation should have been under 5G1.2, which says you would need to run the sentences consecutively. So you would have a string of 20-year sentences for a maximum of 209 years, was what this court had said. Now, that's a beginning point. That doesn't help my client on essentially having a life sentence. But the district court, while it's doing that, would have before it a consideration about once the guideline calculation is made, should all of that run consecutively? And we have arguments to be made to appeal to the court that could not have been made and could not have appealed to the court in 1999 under mandatory guidelines. Counsel, just all candor with you, everything you're talking about just going right over my head, because this is a standing issue that we have before us, plain and simple. And you've had two bites out of the apple. And I believe Judge Masson, he said, we conclude that the district court calculated Mr. Price's sentence based on the cross-reference of first-degree murder and that his sentence was not dependent on a particular quantity of cocaine base. Now, if that's the law of this case, how do you possibly with everything you're talking about have standing? Because it's not based on any cocaine. The reason he's not eligible or he has no standing, he may be eligible according to the way you put it, but he has no standing at all. That decision's been made. So why don't we just cut through the chase? Well, I think that the rulings that have been made that say the sentence is correct under the non-applicability of Apprendi was the concern at the time that there was no prejudice under plain error. And so Apprendi error was found, but it could not be redressed under the requirement of prejudice. And so the subsequent rulings have been made addressing denial of sentence modification and observing that the sentence is not based on. How does that help you in this case? Because they're all different issues than this case. There's no standing. There's a determination of no eligibility for retroactive guidelines under 3582C2 because the sentence was not based on the drug, the table C in 2D1.1, and that's not the issue going on in this case. Those cases I don't think are at odds or in tension with the fact that our sentence has the discretion to correct the Apprendi error, and then the next step should the court go ahead and weigh the 3553A factors. That's never been done, and it's not foresawed by any previous ruling by this court and decide whether or not even conduct in prison or whatever the court has its discretion, how it decides to deploy its discretion, it has that power. And therein lies the possibility, which is what Manny says we look for, the possibility of an outcome that could reduce the period of incarceration. And the court on resentencing could sweep away any prior sentence that the defendant had received under cross-references. He could have multiple cross-reference sentences, and all those would be in play at resentencing under your theory as long as we're dealing with a covered offense under the First Step Act. In terms of sweeping away, of course, I still acknowledge the court would have an obligation to correctly calculate the sentencing guidelines, and so that cross-reference is there. But consideration of the guideline range is one among other 3553A factors, and so as the court looks at those additional factors, it does, legally, it does have the opportunity which creates a possibility of rendering a lower sentence. In this case, why shouldn't we treat the cross-reference as the functional equivalent of a concurrent sentence, like you see in Manny and some of the others? Those are situations where because of a count that cannot be modified, then the fact that another count can be modified blocks the opportunity to have modification on the count that's eligible for modification. So if there's one count that's eligible, one count that's not, let's say that is a covered offense, then the court cannot grant anything as to the offense not covered. When both offenses have CC terms for the same duration, then the person is going to do that sentence on the count that can't be modified. That is not the situation here because the court can modify. There is not some barrier to modification. In the Carrillo case, the situation was a little different where the judge said, I refuse to modify as to count one I have discretion to, but I refuse. Count 17 is also eligible, but since they are CC terms for the same period, if I decide not to modify in count one, then modifying count 17 won't do you any good. And so this court, in fact, Judge White was involved in the Ellis case. But in Carrillo, that case is distinguishable from our situation because it's not analogous to a sentencing determination based on the guidelines. The cross-reference does not stand as a wall or barrier to Judge White modifying the sentences in this case. Yes, some of our cases state that the First Step Act defendants not entitled to a plenary resentencing, yet that's really kind of what I see you asking us for in this case. How would you distinguish that line of cases? Well, again, Manny says that the court may consider 3553A factors, and nothing has stood against that, and that has been the framework of my briefing in district court. Correctly calculating the guideline range, I had an argument that an official victim adjustment was inapplicable. It was three offense levels would have lowered us from 46 to 43. That still is within the guideline chart that gets you the life sentence, but it is less egregious. And so as the court weighs the 3553A factors, being four offense levels above the threshold for a life sentence, or however many it was, is a factor that weighs. I pointed out that the factual support in the PSR for the murder itself, in which the district court Judge See had found that the defendant, Mr. Price, had secured the absence of a witness, was rather aloof in terms of not saying all the elements of first degree murder are had here, and the court could consider whether or not a life sentence should be warranted when it's supported on a fairly weak basis. Counsel, thank you very much. I appreciate that. Let's hear from Ms. Epperle in the United States. May it please the court. I'm Linda Epperle. I'm an assistant United States attorney in the office in Muskogee, and I represent the government in this matter. This case has been going on since 1999 when the defendant was sentenced. He has been here, as Judge Timkovitz pointed out, numerous times, and as Judge Rosman noted. In fact, this court three times has noted that the cross-reference to the murder guideline requires a life sentence in 2001, in 2004, in 2012. This court ruled that the defendant's sentence is not based on crack cocaine. But you don't dispute that Mr. Price is serving all of the sentences he's serving now are for crack cocaine offenses. They're all covered offenses, right? They're all crack cocaine offenses, and that is why we had said below that he's eligible. To me, and I wrote the brief, but to me, when I think, is he eligible, I look at these cases and I'm trying to figure out, is there also heroin involved? Is there methamphetamine involved? Is there something that's going to get us into a split situation? Here, they're all crack cocaine offenses. So to me, they're eligible, but that just are statutorily eligible. But that is not the same as having constitutional standing. I just don't understand how Manny applies here at all. I mean, I understand what Manny holds. It's the law of our circuit that we need statutory and constitutional standing, but I just don't see how applying Manny here gets you the result you're seeking. To me, Your Honor, what Manny said is that there is this separate issue of constitutional standing, that there has to be constitutional standing. That's not present here because the cross-reference to the murder guideline is what guides the sentence. But how is it that there's, are you contending that there is a, that a change in the defendant's guideline range is a jurisdictional prerequisite under the First Step Act? Well, in most of these cases, there's going to be a change in the guideline range. Here, there is not a change in the guideline range, number one, because the cross-reference drives the sentence. But how is that relevant right now? I just, I mean, maybe down the road, if there's some form of plenary resentencing, the district court will be able to look at that and say, yeah, I am going to drive my sentence based on that again. But we're in First Step Act territory. And if this defendant seems to me to be really different from Mr. Manny, or the defendant in Manny, has all covered offenses which you can concede, I just don't see how that is relevant at this stage to standing. It seems to me that it's relevant because the Carrillo case points out, citing previous decisions of this court, that if it becomes impossible at any point for a court to grant effective relief, then the injury is no longer redressable, the court loses jurisdiction over the claim. I think one of the things that may not have jumped out at me until I was preparing for this oral argument is that at pages 9, 12, and 15, the defendant's brief talks about the fact that the guidelines are advisory now. Well, this defendant committed his crime in 1997. He was sentenced in 1999, pre-Bilker. And there is no citation given by the defense for this assertion that, well, the guidelines are advisory now. We would argue that that's not the case, that this would be a case where those mandatory guidelines still apply, because Booker does not apply retroactively. This court has determined that. In the Bellamy case at 4-11, Fed Third, 1182, and I would be happy to submit a letter of supplemental authority. So you're contending that the district court doesn't have the power to redress, which is the language of Manny. Yes. Just because the guidelines would be mandatory at resentencing? Yes. That's one reason. Yeah, well, why is that the case? I mean, the cross-reference would now go from a mandatory life sentence to under, you know, the guidelines would be mandatory versus, I assume in a hypothetical world, as posited by Mr. Derryberry, that the court would have the discretion under 3553A not to impose life, right? Right. If that's the case, then why isn't, you know, and it's inextricably the cross-reference is linked to the covered offense, why doesn't that give, why doesn't that create the possibility for a lower sentence on remand, on resentencing? Your Honor, I think that the closest case that I could find in looking at this was the Hall decision at 8th, 4th, 932 in 2021. We're in a first step that case, although one that dealt with more with COVID than with what we're dealing with here. The court rejected those sort of arguments that, you know, there's a way that the court could, the defense there argued, there's a way that we could have a different result. Under Booker, the court always has the authority to vary, the sort of arguments that were made here. And this court did not accept that and noted that in Dillon, the Supreme Court decision required that the court reject those type of arguments. But the mandatoriness is not the only way that the government should prevail here. Congress passed, I think the court would also need to look at the congressional intent. Congress passed the Fair Sentencing Act and the FSA. Portion to correct that disparity in crack cocaine versus powder cocaine cases. Congress never intended. And it was not the goal of Congress to give a windfall to this defendant who's sentence for the last 20 years has considered to be driven by the fact that he killed a federal informant. This sounds very much like an argument that you would maybe make successfully in the district court. Yes, but it is not a stand. Standing is, to me, the court's ability to grant relief, the ability to get to a different result, the ability to somehow redress and change the defendant's sentence, or the possibility that he wouldn't get a life sentence. We believe that murder guideline calls for a life sentence. And this court has agreed with that several times over the years. And there's a danger to granting this defendant the sort of plenary, full-scale sentencing he's asking for. He wants to get back into whether or not there should be a variance granted and that he should have a new hearing. And we should go back into all of this. First of all, I think there's a problem because the Constitution requires that standing be present. Secondly, there's a problem with resources in Muskogee. I mean, whether it's the court or the Federal Defender's Office or our office, the amount of time to put into this case, I'm not saying that he's not deserving, but he's not. I don't think we can look at that. You know, for me, is, you know, why isn't the cross-reference here distinguishable from the, you know, the concurrent sentence, or the consecutive sentence doctrine? You know, the court's saying there's not standing because I can't do And the argument here is because it's not a concurrent sentence, I can do something about the sentence here because it's merely a cross-reference that's hooked to the covered fence. I mean, those are different sentencing scenarios. Help me. Explain to me why cross-reference is the same as a concurrent sentence. That's the same or higher than what he has. I don't think that they are exactly the same, and it makes it very difficult to understand. I mean, I want to look at those cases and say that they are distinguishable because they deal with, you know, a separate type of drug. This is totally a different thing, where you have the cross-reference to the murder guideline. And I still have not managed to find another case that specifically fits these facts. What I do know is that the government would strongly object to a plenary resentencing in this case. This is not a normal drug case where, you know, we're just talking agents needing to come testify. This would, in effect, be a murder case that we're trying. We've got 20 years down the line. We don't know where the witnesses are. You know, all of those types of problems. But the thing that really distinguishes it from our point of view, from the government's point of view, is that this is, in effect, we have a victim's family. When Siku Lurtz was murdered, he had a young child. We've got to find that person. And even if sentencing is not changed, the mere fact that that victim's family has to go through all of this again after 20 years is trauma-inducing to that family, and we feel not justified when the guideline is not likely to change. So that's, I think, you've hit at the heart of my question, that those are certainly sympathetic, important concerns, but they're not relevant to the standing inquiry at all. In footnote 9 in Manny, we said, as long as it is possible for the court to grant some actual reduction, an offender will have standing. And I think the government's position is it's unlikely that there will be an actual reduction, right? It's unlikely. That is certainly our position. Well, but we would argue that because the guidelines are still mandatory for this defendant, although they may not be for the majority of defendants you see, because his crime was so long ago, that cross-reference and the sentence it requires is still going to be mandatory the same way it was mandatory in 1999, because the Supreme Court has said in Dillon that this is not a plenary resentencing. What Congress intended was a limited adjustment to an otherwise final sentence. That limited adjustment is not going to make a difference here. I mean, practically, no, we don't think it's likely there will be some other result for any number of reasons. I mean, we'd move for an upward variance at the time of sentencing. The court didn't grant it, because why the need? I mean, we're going to sentence him under this mandatory guideline to lie. Is there any other situation you can think of where constitutional standing is informed by whether the person is going to win the merits of their claim? No. I mean, I understand the court's position, and that normally the mere fact that there might be some... I understand. I mean, we wouldn't normally raise that. We would litigate it and everyone see what happens in the end. But here we know what's going to happen in the end, because there is a mandatory cross-reference to the murder guideline that this court has upheld again and again and again. That means that there would not be a possibility for any review, so the government and the victim's family should not be put through. I jumped down the logic chain that I started with in this case, and I get to a fork in the road after we start with eligibility, and then we're looking for an injury here. And the fork in the road for injury, one way goes advisory guidelines, and the other way it goes mandatory guidelines. And so the opinion you want us to write is we take the mandatory guidelines fork, that forecloses any deviation from the current sentence. Yes. And your best authority for that is Dillon or is... Dillon, this court's just... I'm going to back up a little. Yes, I will.  But I think Dillon would be the Supreme Court precedent, this court's precedent would be Bellamy and Hall, and we will submit supplemental information. But that would allow this court to write a really narrow ruling. The quirk in this case is the initial sentence was so long, predated Booker and Apprendi, et cetera. Yes, Your Honor, and hopefully then you could issue this opinion, not mess up the court's jurisdiction on all of these cases generally, because it's an unusual fact situation. It's not one I've found anywhere else, and to adopt that logical path would allow this court to write a very limited holding addressing the unusual facts here. If we disagree with you and I take the advisory guideline fork, shouldn't Mr. Price win in that case? At least have a shot at making his arguments for resentencing. If the guidelines are truly advisory as applied to the cross-reference. I want to say no because of the problems it's still going to cause for the victim's family, but to be intellectually honest, there would then be, I guess, a possibility. But we would then fall back on the fact that this is not supposed to be a And for that reason, I can intellectually be honest and say I would still disagree. We ask the court to affirm. Thank you, counsel. We appreciate the very fine arguments this morning. It's a very interesting and difficult case. You are excused. The case is submitted.